UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

RAFAEL D. FIGUEROA,

                                **MEMORANDUM AND ORDER**

               Plaintiff,            20-cv-2700(KAM)

       v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

         Pursuant to 42 U.S.C. § 405(g), plaintiff Rafael Figueroa ("Plaintiff") appeals the final decision of defendant, the Commissioner of Social Security (the "Commissioner" or "Defendant"), which found that Plaintiff was not eligible for disability insurance benefits under Title II of the Social Security Act ("the Act"), on the basis that Plaintiff is not disabled within the meaning of the Act.  Plaintiff alleges that he is disabled under the Act and is thus entitled to receive the aforementioned benefits.

         Presently before the court are Plaintiff's motion for judgement on the pleadings (ECF No. 17, "Pl. Mot.") and Defendant's cross-motion for judgement on the pleadings (ECF No. 19, "Def. Cross-Mot."). For the reasons stated herein, Plaintiff's motion is GRANTED, Defendant's cross-motion is

DENIED, and the case is remanded for further proceedings consistent with this Memorandum and Order.

<u>**BACKGROUND**</u>

The parties have submitted a joint stipulation of relevant facts, which the court hereby incorporates by reference in its entirety.  (*See* ECF No. 22, Joint Stipulation of Relevant Facts ("Joint Stip.").)  Having reviewed the joint stipulation of relevant facts, the Administrative Law Judge's ("ALJ") decision, and the administrative record, the court notes the following.

**I.  Prior Applications for Disability Insurance Benefits**

Plaintiff Rafael Figueroa previously filed for, and was denied, disability insurance benefits ("DIB") on two occasions.  Plaintiff first alleged a disability onset date of September 7, 2001.  (ECF No. 16, Administrative Transcript ("Tr.") at 206.)  The precise date when Plaintiff's first application was denied is not specified in the record, which indicates only his alleged onset date as well as a shorthand reason for denial: it was determined Plaintiff retained the capacity to perform substantially gainful activity in past relevant work.  (*Id.*)  Plaintiff's second application for DIB alleged an onset date of December 26, 2011.  (*Id.*)  Plaintiff's second application was denied on April 15, 2015, and the

justification for denial was the same as in his previous denial. (*Id.* at 75, 206.)

## II.   Plaintiff's Instant Application for Disability Insurance Benefits

On March 28, 2017, Plaintiff filed the instant application for DIB due to major depressive disorder, anxiety disorder, status post cerebrovascular accident ("CVA") with residuals, and a hearing impairment. (*Id.* at 19, 88.)  The alleged onset of Plaintiff's disability was April 16, 2015, the day after the denial of his second application for DIB. (*Id.* at 185, 206.)  Plaintiff claims he was disabled following a stroke he suffered in 2011 and that his condition has worsened over time.  (Joint Stip. at 12.)

On July 28, 2017, the Social Security Administration ("SSA") denied Plaintiff's request for DIB, concluding that the relevant medical evidence showed Plaintiff was not disabled within the meaning of the Act over the relevant period.  (*Id.* at 91-102.)  On September 2, 2017, Plaintiff filed a request for a hearing before an ALJ, which was held before ALJ Sandra M. McKenna on December 21, 2018 in Queens, New York.  (*Id.* at 103-104, 38-69.)  Christine Ditrinco, a vocational expert, provided testimony during Plaintiff's hearing.  (*Id.* at 61-69.)  In a decision dated February 19, 2019, ALJ McKenna found the following: (1) Plaintiff remained insured only through December

31, 2015 ("the date last insured"), requiring Plaintiff to establish disability on or before the date last insured to be entitled to a period of disability and disability insurance benefits; and, (2) Plaintiff was not disabled within the meaning of the Act. (*Id.* at 13-37.)  On February 25, 2019, Plaintiff requested review of the ALJ's decision with the Appeals Council, which was denied on April 14, 2020, thereby making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-5, 175-184).  On June 17, 2020, Plaintiff timely filed the instant action in federal court appealing the Commissioner's decision. (ECF No. 1, Complaint ("Compl.").)

III.   **Medical and Non-Medical Evidence**

A. **Consultative Examiner Opinion of Dr. Chaim Shtock**

On October 20, 2014, Dr. Chaim Shtock, D.O., a SSA consultative examiner, determined that Plaintiff could sit continuously for forty-five minutes and for only four hours total in an eight-hour workday. (Tr. at 271; Joint Stip. at 10.)  Dr. Shtock indicated that Plaintiff demonstrated slightly slow speech, slow and slightly unsteady gait, use of a cane, grip strength 4+/5 bilaterally, and strength 4+/5 in proximal and distal muscles. (Tr. at 265-276.)  Dr. Shtock diagnosed Plaintiff with gait dysfunction as well as, by history, brain tumor, stroke, numbness, decreased balance, decreased short-term memory, depression, anxiety, decreased comprehension and

4

concentration, episodic fatigue, episodic difficulty swallowing,
episodic speech problems, psoriasis, acid reflux, and genital
herpes.  (*Id.*)

### B. Medical Treatment and Opinion of Treating Physician Dr. Hasit Thakore

On May 13, 2015, Dr. Hasit Thakore, M.D., a board-
certified neurologist at TJH Medical Services who had been
treating Plaintiff since his stroke in 2011, determined in a
stroke impairment questionnaire that Plaintiff suffered from a
CVA in 2011 as well as from brain tumor surgery between the ages
of seven to eight, from which he experienced residual brain
damage and a brain shunt.  (Tr. at 283.)  Dr. Thakore opined
that Plaintiff's prognosis for recovery to full or partial
functioning was poor.  (*Id.*)  In support of his diagnosis, Dr.
Thakore identified the following positive clinical findings:
paresthesia in the right half of the body, tremor or involuntary
movement in the upper right half of the body, ataxia requiring a
cane to ambulate, decreased sensation on the right side,
aphasia, dysarthria, slow speech, and forgetfulness at times.
(*Id.* at 284.)  Dr. Thakore identified the following laboratory
and diagnostic test results to support his diagnosis: MRI, CT
scan, and clinical exam.  (*Id.*)  Dr. Thakore identified the
following symptoms: poor coordination, headaches, difficulty
remembering, weakness, unstable walking, numbness, sensory

disturbance, fatigue, speech/communication difficulties, difficulty concentrating, and ataxia. (*Id.* at 284-285.) Dr. Thakore indicated Plaintiff's symptoms and functional limitations were reasonably consistent with Plaintiff's physical and emotional impairments, and that Plaintiff had significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement or gait and station as a result of his CVA. (*Id.* at 286-286.) Dr. Thakore, asked to estimate Plaintiff's residual functional capacity ("RFC") if placed in a competitive five day a week work environment on a sustained basis, failed to circle (as instructed) how many hours plaintiff could sit, stand, or walk in an eight-hour day, instead writing-in next to the question that Plaintiff was "disabled to work." (*Id.* at 286.) Dr. Thakore noted that in the context of a competitive five day a week work environment on a sustained basis, Plaintiff could never lift or carry zero to five pounds. (*Id.*) Dr. Thakore indicated that Plaintiff was incapable of even "low stress" work because of his brain surgery and CVA, which would produce "good days" and "bad days," and when asked to estimate how often Plaintiff would be absent from work as a result of his impairments wrote: "[Plaintiff has] chronic daily symptoms and is disabled to work." (*Id.* at 287.)

On July 15, September 16, October 7, and December 16, 2015, Plaintiff was seen by Dr. Thakore, who reported no change in diagnosis and no improvement from Plaintiff's disability from CVA, brain tumor, and chronic genital herpes.  (*Id.* at 307, 310, 313.)  On October 7, 2015 Plaintiff received an additional head CT scan, which demonstrated a suboccipital craniectomy, calcifications inferiorly along the right cerebellar hemisphere, severe cerebellar atrophy, ex vacuo dilation of the fourth ventricle, a ventricular shunt via a right frontal approach demonstrating a tip projecting over the frontal horn of the right lateral ventricle, and a prior ventriculostomy on the contralateral frontal lobe.  (*Id.* at 340.)  Plaintiff was seen multiple times over the next two and a half years after the date last insured by Dr. Thakore and other doctors at TJH Medical Services with no noted improvements.  (*See id.* 340-359.)

### C. Medical Treatment and Opinion of Dr. Pedro D. Ong

On May 8, 2015, Dr. Pedro D. Ong, M.D. completed a disability impairment questionnaire.  (Tr. at 277-281.)  As is also the case with Dr. Ong's treatment records from January 2, 2015 - May 3, 2017, much of Dr. Ong's diagnoses and reported symptoms are illegible.  (*Id.* at 277-281, 372-376.)  Nevertheless, Dr. Ong clearly wrote that he does not perform functional evaluations and "slashed through" the questionnaire— or otherwise left responses to its questions blank—relating to

Plaintiff's functional limitations, including Plaintiff's ability to sit during an eight-hour workday.  (*Id*. at 279.)  In an electronic message on September 6, 2017, Dr. Ong reaffirmed that he does not perform functional evaluations.  (*Id*. at 414.)

### D. Medical Treatment and Opinion of Dr. Elaine Schiesel

On February 8, 2017, Plaintiff was seen by Dr. Elaine Schiesel, M.D., a doctor at Jamaica Hospital Medical Center, for a follow up neurosurgery clinic visit.  (*Id*. at 362-363.)  Dr. Schiesel's progress notes indicated Plaintiff had a history of medullary CVA "now with residual ataxia, weakness, numbness, and dysphagia."  (*Id*. at 362.)  Dr. Schiesel performed an examination and determined the following: 5/5 strength in upper and lower extremities, except for lower extremity flexion, which was 4-5/5; 1-2/2 reflexes; and intact cranial nerves.  (*Id*. at 323.)

### E. Consultative Opinion of Dr. James Greco

On July 8, 2017 Dr. James Greco, M.D., a Disability Determination Services ("DDS") medical consultant, provided a consultative examination of the record.  (*Id*. at 74-76.)  Dr. Greco noted the following: Plaintiff was 38 years old, had a brain tumor at age 8 with a ventriculoperitoneal shunt placed at that time, and had a medullary stroke in December of 2012 with residual ataxia, weakness, numbness, and dysphagia.  (*Id*. at 75.)  Dr. Greco also noted Plaintiff had recent onset hearing

loss in his right ear with 4% speech discrimination, while his left ear hearing remained normal with a 100% speech discrimination score. (*Id.*) Dr. Greco opined that findings from Plaintiff's March 3, 2017 examination with Dr. Thakore were "markedly different from those described" with Dr. Schiesel on February 8, 2017, but that there was no indication of any neurologic event since December 2012, no medical reason to think Plaintiff's stroke residuals would have changed over time, and no history of an event that could reasonably explain the difference between the February and March 2017 exam findings. (*Id.*) Dr. Greco indicated that neither of the exam findings would satisfy the criteria of Listing 11.04(B)[1] but recommended DDS to obtain a current neurologic exam to clarify Plaintiff's neurologic status. (*Id.*)

Two days later, on July 10, 2017, Dr. Greco indicated that additional evidence was necessary to clarify Plaintiff's neurologic status considering the difference in neurologic exam findings from the treating sources in February and March of 2017. (*Id.* at 76.) Dr. Greco noted that Plaintiff's date last insured was in December of 2015 and that, therefore, obtaining the requested clarification "will not help to assess claimant's clinical or functional status at his date last insured." (*Id.*)

---

[1] The term "Listing" refers to the listed impairments in Title 20, Code of Federal Regulations ("C.F.R.") Part 404, Subpart P, Appendix 1, including vascular insult to the brain under Listing 11.04.

Dr. Greco further stated that "evidence now in file is insufficient to evaluate claimant's condition prior to [the] date last insured, but the detailed neurologic exam performed at [the] neurosurgery clinic visit with Dr. Schiesel on February 8, 2017, strongly suggests that Listing 11.04(B) was not met at the date last insured." (*Id.*)

### F. Plaintiff Testimony

Plaintiff testified that he has not worked since his first stroke in 2011 and that his condition has worsened over time. (Joint Stip. at 12; Tr. at 50.) When asked, Plaintiff responded that he could walk for half an hour with a cane for a total distance of one or two blocks and that he could sit for 10 or 15 minutes before needing to move because his back felt tightened. (Tr. at 50-51, 57.) When asked if he believes he would be able to perform a job sitting down, Plaintiff responded that he could not because he is unable to sit continuously. (*Id.* at 53.) Plaintiff additionally testified that he does not believe he could perform a job for eight hours straight because he would likely fall asleep. (*Id.* at 54.) Plaintiff explained that he naps between two and three hours during the day because of problems he has sleeping at night due to intense back pain, anxiety, and panic attacks. (*Id.* at 54-55, 60.) Plaintiff averred that to relax himself he lies flat down on his back, as

it is the only time he is untroubled by his back pain.  (*Id.* at 55.)

Plaintiff also represented that he lost hearing in his right ear after his stroke and that his right ear rings persistently every day, often distracting him.  (*Id.* at 51-52, 59.)  Plaintiff testified that he believes he can lift about 10 pounds and that he helps his grandmother with grocery shopping.  (*Id.* at 52.)  Plaintiff testified that his grandmother does his laundry at home, and that although he can shower and dress himself, he has to "take [his] time" doing so due to back pain and forgetfulness.  (*Id.*)  Plaintiff also testified that although he has a driver's license that he acquired before suffering his strokes, he has not driven since.  (*Id.* at 56.)  Plaintiff represented that he has problems with communication because of slurred speech as well as difficulties comprehending and following conversations.  (*Id.* at 56-57.)  Plaintiff also testified that he has problems with his balance; when he walks his right leg sometimes either drags behind him or he has problems picking the leg up, and that his right arm feels weak.  (*Id.* at 58.)

## **LEGAL STANDARD**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits

"within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A district court, reviewing the final decision of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion."  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)) (internal quotation marks omitted).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g).  Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'"  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).  The reviewing court

does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant is disabled under the Act when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability.  *See* 20 C.F.R. § 404.1520.  This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.152(a)(4).

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits."  20 C.F.R. § 404.1523.  Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process.  20 C.F.R. § 416.945(a)(2).  In steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability."  *Burgess*, 537 F.3d at 128.  At step five, the burden shifts from

the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's RFC, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts*, 94 F.3d at 39.  If the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," however, the court may reverse and remand solely for the calculation and payment of benefits. *See, e.g.*, *Parker v.*

*Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

**DISCUSSION**

**I.  New Regulations Regarding Evaluation of Medical Opinion Evidence**

Previously, the SSA followed the "treating physician rule," which required the agency to give controlling weight to a treating source's opinion, so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 416.927(c)(2).  The 2017 regulations changed this standard for DIB applications filed "on or after March 27, 2017." *Id.* § 404.927.  As Plaintiff filed the instant application on March 28, 2017, the new regulations apply to this action.  (Tr. at 19, 88.)

Pursuant to the new regulations, the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, when evaluating the persuasiveness of medical opinions, the Commissioner will consider the following five factors: (1) supportability; (2) consistency; (3) relationship of the source with the claimant, including length of the treatment

relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and whether the relationship is an examining relationship; (4) the medical source's specialization; and (5) other factors, including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." *Id.* § 404.1520c(c)(5).

The most important factors of a medical opinion in evaluating persuasiveness are supportability and consistency. *Id.* § 404.1520c(a). With respect to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

17

The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record. *Id.* at § 404.1520c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 19-cv-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2). The ALJ may, but is not required to, explain how she considered the remaining factors. *Id.* When the opinions offered by two or more medical sources about the same issue are "both equally well-supported ... and consistent with the record ... but are not exactly the same," however, the ALJ shall articulate how he considered the remaining factors in evaluating the opinions. 20 C.F.R. § 404.1520c(b)(3).

> Even though ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the "foundational nature" of the observations of treating sources, and "consistency with those observations is a factor in

> determining the value of any [treating source's] opinion."

*Soto v. Comm'r of Soc. Sec.*, No. 19-cv-4631 (PKC), 2020 WL 5820566 (E.D.N.Y. Sept. 30, 2020) (quoting *Shawn H. v. Comm'r of Soc. Sec.*, No. 19-cv-113 (JMC), 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018))).

## II.   The ALJ's Disability Determination

Applying the five-step sequential process to determine whether a claimant is disabled as mandated by Title 20 C.F.R. Section 416.971, the ALJ determined at step one that plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of April 16, 2015, through the date last insured on December 31, 2015.  (Tr. At 19.)  At step two, the ALJ determined that plaintiff suffered from the severe impairments of major depressive disorder, anxiety disorder, post cerebrovascular accident with residuals, and a hearing impairment.  (*Id*.)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Title 20 C.F.R. Part 404, Subpart P, Appendix 1, including impairments to special senses and speech under Listing 2.00, vascular insult to the brain under Listing 11.04, depressive,

bipolar, and related disorders under Listing 12.04, and anxiety
and obsessive compulsive disorders under Listing 12.06.  (*Id*.);
20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

At step four, the ALJ determined that Plaintiff had
the RFC to perform sedentary work as defined in Title 20 C.F.R.
Section 404.1567(a).  (Tr. at 21.)  The ALJ found Plaintiff
could climb ramps and stairs occasionally; could never climb
ladders, ropes, or scaffolds; used a cane for ambulation; could
stoop, crouch, and crawl occasionally; could hear and understand
simple oral instructions; could perform simple, routine tasks;
and could make simple work-related decisions.  (*Id*.)

In making her RFC determination, the ALJ found the
opinion of Dr. Shtock "persuasive."  (*Id*. at 30.)  The ALJ
reasoned that Dr. Shtock "is a medical doctor and examining
source with an appropriate area of expertise."  (*Id*.)
Additionally, the ALJ found Dr. Shtock's opinions "largely
consistent with his own clinical findings and with the medical
evidence of record for the period at issue."  (*Id*.)  The ALJ
also found, however, that Dr. Shtock's examination was performed
prior to the disability period and that other relevant medical
evidence "does not support a limitation of sitting for only 4
hours total in an 8-hour workday."  (*Id*.)  Dr. Shtock's opinion
as to this final limitation was, therefore, "not found to be
persuasive."  (*Id*.)

The ALJ incorrectly determined that the opinion of Dr. Ong was that Plaintiff was able to perform a job in a seated position for only one hour in an eight-hour workday and in a standing/walking position for three hours in an eight-hour workday.  The ALJ's incorrect reading is of a disability impairment questionnaire Dr. Ong completed on May 8, 2015.  (Tr. at 277-281.)  Dr. Ong wrote that he does not perform functional evaluations and "slashed through" the questionnaire.  (*Id.* at 279.)  The ALJ incorrectly understood these markings to indicate Dr. Ong's opinion of Plaintiff's seated, standing, and walking limitations.  Dr. Ong left the remainder of the questionnaire related to functional evaluations blank and reaffirmed in an electronic message on September 6, 2017, that he does not perform functional evaluations.  (*Id.* at 279-281, 414.)  In her incorrect interpretation of Dr. Ong's disability impairment questionnaire, the ALJ found the opinion of Dr. Ong that Plaintiff was able to perform a job in a seated position for only one hour in an eight hour workday "not persuasive, as although he is a medical doctor a treating source, this opinion of such extreme limitations in sitting to perform a job function is wholly unsupported by any medical evidence of record, including Dr. Ong's own notation that claimant's main symptom was mild right-sided weakness and numbness."  (*Id.* at 30.) Elsewhere, the ALJ also noted Dr. Ong's conclusion was "not

supported by [Dr. Ong's] mild findings." (*Id.* at 23.)  As to

Dr. Ong's conclusion that Plaintiff was able to perform a job in

a standing/walking position for three hours in an eight-hour

workday, the ALJ found his opinion "somewhat persuasive." (*Id.*

at 30.)  In explanation, the ALJ offered that "the evidence of

record better supports limitation to 2 hours in an 8-hour

workday" with no further elaboration.  (*Id.*)

   The ALJ found the opinions of Dr. Thakore that (1)

Plaintiff had significant and persistent disorganization of

motor function in two extremities resulting in sustained

disturbance of gross and dexterous movement or gait and station;

and (2) Plaintiff was never able to lift or carry up to 5

pounds, "only somewhat persuasive, as the medical evidence of

record does not sufficiently support a finding that the

claimant's documented stroke residuals caused such extreme

limitations." (*Id.*)  Further, the ALJ found that Dr. Thakore's

numerous conclusions[2] that Plaintiff was disabled to work were

"not persuasive." (*Id.*)  In finding these conclusions not

persuasive, the ALJ reasoned that "the determination of

disability is reserved to the Commissioner" and elsewhere opined

that Dr. Thakore "did not provide any specific opinions

---

[2] Dr. Thakore concluded Plaintiff was disabled to work in examination reports
in May, July, and December of 2015; examination reports in March and July of
2016; and quarterly treatment records through the year 2017.

regarding the claimant's functional abilities or limitations."
(*Id.* at 24-25, 30.)  Finally, the ALJ found Dr. Thakore's
opinion that Plaintiff "does not have emotional factors
contributing to his symptoms as functional limitations" only
"somewhat persuasive."  (*Id.* at 30.)  The ALJ stated that Dr.
Thakore's "indications that the claimant's symptoms were
constantly severe enough to interfere with attention and
concentration, or that he was incapable of even low stress
work," were "not persuasive."  (*Id.* at 30-31.)  The ALJ stated
that the limitations which Dr. Thakore indicated rendered
Plaintiff unable to perform low stress work during the period of
disability were also present during periods Plaintiff
successfully worked following his stroke in 2011.[3]  (*Id.* at 24.)
The ALJ further explained that "Dr. Thakore does not have an
appropriate area of expertise in mental health to provide such
opinions."  (*Id.* at 31.)

        The ALJ found the opinion of Dr. Greco stating that
Plaintiff did not meet Listing 11.04(B) "somewhat persuasive."
(*Id.*)  The ALJ reasoned that Dr. Greco is "a medical doctor with
an appropriate area of expertise who reviewed all of the
evidence of record available at the time that he completed his

---

[3] As will be explained *infra*, the ALJ erred in reaching this conclusion, as
Plaintiff has not worked since his stroke in 2011.  (Tr. at 50, 190, 192,
197, 199, 204, 206, 211, and 240.) The Commissioner's lawyers argue in
briefing, to no avail, that this is harmless error.

assessment" and that his "opinion is consistent with the medical evidence as a whole." (*Id.*) Dr. Greco's opinion was only somewhat persuasive, however, because he "did not have the opportunity to examine the claimant." (*Id.*)

The ALJ found the opinion of Dr. Joyce Graber, M.D. who performed a consultative internal medicine examination on April 2, 2012, "not persuasive." (*Id.* at 22, 31.) Despite her appropriate qualifications, Dr. Graber's examination took place prior to the alleged onset date and, therefore, reviewed only for the purposes of developing a longitudinal history. (*Id.* at 22, 31.) Additionally, Dr. Graber determined Plaintiff had only "mild limitations in bending, squatting, and other activities," but this was "not sufficiently consistent with the medical evidence for the period at issue, which supports more significant limitations during the relevant period." (*Id.* at 31.)

The ALJ found that the opinions of Dr. Thakore and Dr. Jonathan Guterman, M.D., a vascular neurologist also at TJH Medical Services, that Plaintiff was disabled were "not persuasive." (*Id.*) The ALJ reasoned that "the issue of disability is reserved to the Commissioner." (*Id.*) The ALJ additionally noted that several of Dr. Thakore and Dr. Guterman's medical opinions were provided after the date last

insured and were, for that reason, also "not persuasive."  (*Id.* at 26.)

The ALJ found the opinion of Dr. Toula Georgiou, Psy.D. that Plaintiff would have difficulties performing complex tasks "persuasive."  (*Id.*)  The ALJ reasoned that Dr. Georgiou "is an examining source with an appropriate area of expertise" and that "this portion of her opinion is consistent with her own clinical findings and with the medical evidence as a whole." (*Id.*)  As to Dr. Georgiou's opinion that Plaintiff would have other difficulties related to dealing with stress or that psychiatric issues would interfere with daily functioning, the ALJ found Dr. Georgiou's opinion "not as persuasive."  (*Id.*) The ALJ reasoned that this determination was "not sufficiently supported by either [Dr. Georgiou's] own clinical findings or by the medical evidence as a whole, which support no more than mild limitations in these areas."  (*Id.*)

The ALJ found the opinion of Nurse Practitioner Wendy McIntosh, PMHNP "somewhat persuasive, as she is a treating source" and her opinions were "consistent with the medical evidence as a whole for the period at issue."  (*Id.*)  The ALJ reasoned Ms. McIntosh's opinion was, nevertheless, only somewhat persuasive because much of her questionnaire was marked "unknown" and the limitations described only applied after the date last insured.  (*Id.*)

The ALJ found the opinion of DDS medical consultant Dr. C. Anderson that Plaintiff's mental impairment relating to depressive, bipolar, and related disorders was non-severe "unsupported" and otherwise "not persuasive." (*Id.* at 28, 31.) The ALJ reasoned that Dr. Anderson was not an examining source and that evidence presented at the hearing supported a finding of moderate "limitations in understanding, remembering, and applying information," which, taken together, more appropriately result in a severe rating. (*Id.*) The ALJ also found Dr. Anderson's opinion that Plaintiff's impairments did not precisely satisfy Listing 12.04 consistent with the medical evidence. (*Id.*) The ALJ concluded that, through the date last insured, Plaintiff was "unable to perform [Plaintiff's] past relevant work" as a security guard. (*Id.* at 32.)

Lastly, at step five, the ALJ determined that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including as a final assembler, an assembler, and a bench hand. (*Id.* at 33.) Thus, the ALJ concluded that per 20 C.F.R. § 404.1520(g) Plaintiff had not been under a disability as defined in the Social Security Act from the alleged onset date of April 16, 2015, through the date last insured of December 31, 2015. (*Id.*)

## III.   Analysis

On appeal, Plaintiff asserts that the ALJ: (1) improperly evaluated medical opinion evidence, resulting in an improper determination of Plaintiff's RFC, and (2) improperly evaluated Plaintiff's subjective statements.  (ECF No. 18, "Pl. Memo." at 2, 9.)  For the reasons discussed below, the court finds the ALJ erred by: (1) making an RFC finding in the absence of supporting substantial evidence, and (2) failing to properly evaluate Plaintiff's subjective statements. Accordingly, the court remands the case for further administrative proceedings consistent with this Memorandum and Order.

### A. The ALJ Improperly Made an RFC Finding in the Absence of Supporting Substantial Evidence

Plaintiff contends that the ALJ improperly determined he could perform sedentary work, substituting "[the ALJ's] lay interpretation of the clinical and objective testing for the opinions from the treating and examining specialists." (Pl. Memo. at 7.)  The court cannot determine whether the ALJ's conclusory statement that Plaintiff was able to carry out sedentary work is supported by substantial evidence.

Critical to Plaintiff's capacity to perform sedentary work is an analysis of his ability to sit for prolonged periods of time.  "By its very nature 'sedentary' work requires a person to sit for long periods of time even though standing and walking

are occasionally required." *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 643 (2d Cir. 1983) (citing 20 C.F.R. § 404.1567(a)). More specifically, Social Security Ruling ("SSR") 83-10 provides: "sitting should generally total approximately 6 hours of an 8-hour workday" for sedentary work. *See* SSR 83-10, 1983 WL 31251, at *5 (1983); *see also Troupe v. Heckler*, 618 F. Supp. 248, 254 (S.D.N.Y. 1985) (Remanding where the claimant was determined unable to perform sedentary work because he could rarely, if ever, sit for the six or more hours required for sedentary work); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (Noting a required capacity to sit for six hours in an eight-hour workday to qualify for sedentary work).

Despite the ALJ's conclusion that Plaintiff could perform sedentary work, there is no medical opinion in the record indicating Plaintiff was able to sit for the required six hours in an eight-hour workday. To the contrary, both the consultative examiner opinion of Dr. Shtock as well as the opinion of Plaintiff's longtime treating physician, Dr. Thakore, indicate that Plaintiff would be unable to sit for at least six hours in an eight-hour workday. Dr. Shtock determined that Plaintiff could sit for a maximum of only four hours total in an eight-hour workday. (Tr. at 271; Joint Stip. at 10.) Dr. Thakore, when asked specifically in a stroke impairment questionnaire to estimate Plaintiff's ability to sit in an

eight-hour day if placed in a competitive five day a week work environment on a sustained basis, wrote that Plaintiff was disabled to work.  (Tr. at 286.)  The ALJ identified no other medical source in the record expressing an opinion on Plaintiff's functional limitations regarding sitting for sustained periods, let alone sitting for sustained periods in the context of a competitive five day a week work environment.

Nevertheless, the ALJ rejected the opinions of both Dr. Shtock[4] and Dr. Thakore and determined that Plaintiff could perform sedentary work.  (Tr. at 21, 30.)  Plaintiff argues the ALJ made this determination without citing "to any *specific* medical facts nor even persuasive non-medical evidence that supports the sedentary RFC found for Mr. Figueroa."  (Pl. Memo. at 8.)  For the reasons described above, and because the ALJ never elaborated beyond concluding Plaintiff could perform sedentary work, the court finds that the record supports Plaintiff's position.  The Commissioner's lawyers attempt to defend the ALJ's insufficient reasoning:

> The ALJ may "'choose between properly submitted medical opinions,' *Balsamo v.*

---

[4] Notably, the ALJ determined that Dr. Shtock's opinion was "persuasive" as to all findings except for his determination that Plaintiff was capable of only sitting for four hours in an eight-hour workday, which was "not found to be persuasive."  (Tr. at 30.)  As an explanation for this divergence, the ALJ reasoned that Dr. Shtock's examination "was performed prior to the period at issue."  (*Id.*)  It is unclear to this court why the ALJ's reasoning would render Dr. Shtock's opinion unpersuasive as to Plaintiff's sedentary limitations while the ALJ simultaneously found the remainder of Dr. Shtock's opinion "persuasive."  (*Id.*)

> *Chater*, 142 F.3d 75, 81 (2d Cir. 1998),
> including the report of a consultative
> physician, *see Mongeur v. Heckler*, 722 F.2d
> 1033, 1039 (2d Cir. 1983)." *Heaman v.
> Berryhill*, 765 F. App'x 498, 500 (2d Cir.
> 2019).

(Def. Memo. at 6.)  Defendant's own response is inconsistent

with the ALJ's decision.  The ALJ did not choose a submitted

medical opinion in the record that disagreed with Dr. Shtock and

Dr. Thakore, and there is no alternative medical opinion in the

record opining on Plaintiff's capacity to sit for sustained

periods for the ALJ to choose from.  Defendant's cite to

*Balsamo*, omits the remainder of the relevant quotation: "[W]hile

an [ALJ] is free to . . . choose between properly submitted

medical opinions, he is not free to set his own expertise

against that of a physician who [submitted an opinion to or]

testified before him." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d

Cir. 1998) (quoting *McBrayer v. Sec'y of Health & Hum. Servs.*,

712 F.2d 795, 799 (2d Cir. 1983) (internal quotation marks and

citations omitted).  Where, as here, the ALJ did not choose

between medical opinions in the record and did not otherwise

provide a sufficient explanation for her decision, it appears

the ALJ may have set her own expertise against that of the

reviewing physicians.  Finally, despite Defendant's citation of

*Mongeur*, the only report of a consultative physician relevant to

Plaintiff's sedentary capacity is Dr. Shtock's, which the ALJ

not only did not rely upon, but also explicitly discounted. (Tr. at 30.)

Consistent with the above, remand is appropriate. "Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010). *See Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000) (finding that "an ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities"); *Zorilla v. Chater*, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996) (finding that "the lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required"); *Legall v. Colvin*, No. 13-cv-1426 (VB), 2014 WL 4494753, at *4 (S.D.N.Y. Sept. 10, 2014) (remanding where the ALJ "committed legal error in arriving at his RFC determination without citation to any expert medical opinion in support thereof"); *Josephs v. Comm'r of Soc. Sec.*, No. 18-cv-838 (AMD), 2019 WL 1993992, at *2 (E.D.N.Y. May 6, 2019) (remanding where "the ALJ disregarded the only expert medical opinion about the plaintiff's condition and

substituted her own," determining plaintiff could perform
sedentary work where "no physician gave an opinion with these
limitations").

The Commissioner's attorneys offer new explanations
for the ALJ's determination that Plaintiff could sit for at
least the required six hours.  (Def. Memo. at 7-9.)  These new
explanations to this court include analyses of opinions from Dr.
Shtock, Dr. Ong, Dr. Schiesel, and Dr. Greco.  (*Id.*)
Defendant's arguments cannot remedy the ALJ's initial,
inadequate decision because they are plainly not the bases upon
which the ALJ denied Plaintiff's claim, or they are otherwise
inconsistent with the record.  "The courts are not permitted to
'affirm an administrative action on grounds different from those
considered by the agency.'"  *Burgess v. Astrue*, 537 F.3d 117,
131 (2d Cir. 2008) (quoting *Melville v. Apfel*, 198 F.3d 45, 52
(2d Cir. 1999)).  Additionally, "a reviewing court 'may not
accept appellate counsel's *post hoc* rationalizations for agency
action.'"  *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)
(quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S.
156, 168 (1962)).

For example, Defendants argue that Dr. Shtock offered
a narrative opinion that Plaintiff has "no limitation with
sitting long periods," but this was never mentioned by the ALJ,
and Defendants also later jointly stipulated to Dr. Shtock's

32

more specific findings that Plaintiff could only sit for four
hours in an eight-hour workday.  (Def. Memo. at 8; Joint Stip.
at 10.)  Defendants also argue that Dr. Ong marked on a
disability impairment questionnaire that it was not medically
necessary for Plaintiff to avoid continuous sitting.  (Def.
Memo. at 7.)  This explanation is in direct conflict with the
ALJ's opinion, which determined Dr. Ong's stray marks indicated
Plaintiff's inability to sit for one hour continuously.  (Tr. at
30.)  Additionally, though the ALJ found Dr. Ong's finding as to
Plaintiff's ability to sit continuously "not persuasive,"
Defendant now argues that Dr. Ong's finding on the matter was
persuasive.  Notwithstanding these contradictions, Dr. Ong also
wrote on the questionnaire at issue that he did not perform
functional evaluations and later reaffirmed this by electronic
message.  (*Id.* at 279, 414.)  Lastly, Defendants argue that
support for the ALJ's findings was provided by both Dr. Schiesel
and Dr. Greco.  (Def. Memo. at 8.)  Dr. Schiesel, however, is
not mentioned in the ALJ's RFC determination, nor by name in the
ALJ's decision as a whole.  (*Id.* at 13-33.)  While Dr. Greco is
mentioned, the ALJ only ever considered his opinion as to
Listing 11.04(B), and Dr. Greco never made any findings as to
Plaintiff's functional limitations related to sitting.  (Tr. at
30.)

Though the ALJ's inadequately supported RFC finding is a sufficient basis for remand for further proceedings, this court also directs the ALJ to appropriately evaluate medical opinion evidence.  For example, in addition to the ALJ incorrectly interpreting Dr. Ong's disability impairment questionnaire, the ALJ also discounted Dr. Thakore's medical opinion in part based on an inaccurate belief that Plaintiff successfully worked following his stroke in 2011.  (Tr. at 24.) The ALJ further discounted Dr. Thakore's opinion when she determined: (1) that reporting emotional factors did not contribute to Plaintiff's symptoms was incongruous with also reporting issues with attention and concentration following a CVA; and (2) that Dr. Thakore, a board-certified neurologist, did not have appropriate expertise in "mental health" to provide opinions on issues with attention and concentration following a CVA.  (Tr. at 24, 31.)  The court finds that the ALJ discounted Dr. Thakore's opinions related to these two determinations without substantial evidence that "a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)) (internal quotation marks omitted).  On remand, the ALJ should appropriately evaluate medical opinion evidence to make specific findings as to Plaintiff's ability to perform sedentary work, especially with

reference to Plaintiff's ability to sit continuously and for how long.  The ALJ should then determine, in sufficient detail and based on those specific findings, whether Plaintiff has the RFC to perform sedentary work.

**B. The ALJ Improperly Evaluated Plaintiff's Subjective Statements**

The ALJ found in a conclusory statement that Plaintiff's:

> medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

(Tr. at 29.)  Because the ALJ failed to adequately assess the credibility of Plaintiff's statements, remand is required.

The ALJ properly identified the required two-step process for evaluating Plaintiff's subjective statements, first determining whether there is an underlying medically determinable physical or mental impairment "that could reasonably be expected to produce the claimant's pain or other symptoms," and second, once such an impairment has been shown, "evaluat[ing] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations."  (Tr. at 12.); *see also* 20 C.F.R. § 404.1529(a)-(b).  Social Security Ruling

35

("SSR") 16-3p establishes that the ALJ must evaluate at step two using "the [seven] factors set forth in 20 CFR 404.1529(c)(3) and 416.929(c)(3)."  SSR 16-3p, 2017 WL 5180304, at *7 (October 25, 2017).  These include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id*. at *7-8; *see also* 20 C.F.R. § 404.1529(c).  Further, "the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony." *Alcantara*, 667 F.Supp.2d at 277-78 (citing *Lugo v. Apfel,* 20 F.Supp.2d 662, 663 (S.D.N.Y. Sept. 28, 1998)).  "A finding that the witness is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983)).  "Where the ALJ fails sufficiently to

explain a finding that the claimant's testimony was not entirely credible, remand is appropriate." *Valet v. Astrue*, No. 10-cv-3282 (KAM), 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012) (citing *Tornatore v. Barnhart*, No. 05-cv-6858 (GEL), 2006 WL 3714649, at *6 (S.D.N.Y. Dec. 12, 2006)).

The ALJ's finding that Plaintiff's allegations were not credible was based on several observations:  the ALJ noted Plaintiff's medical treatment had been conservative, he had been hospitalized only on rare occasion, his medications were not unusual for either type or dosage and did not appear to have adverse side effects, and that he was engaged in activities such as performing personal care, light cooking, cleaning, shopping, and traveling independently by public transportation.  (Tr. at 30.)  The ALJ's abbreviated analysis did not clearly evaluate the plaintiff's credibility according to the seven factors above as required by the regulations and SSR 16-3p cited *supra*.  For example, the ALJ neglected to consider the location, duration, frequency, and intensity of Plaintiff's pain, as well as the factors that precipitate and aggravate Plaintiff's symptoms (such as sitting for prolonged periods of time). The ALJ also failed to consider measures other than treatment Plaintiff uses to relieve pain (such as lying flat on his back).  Accordingly, the ALJ's incomplete analysis warrants remand. *See, e.g.,*

*Wright v. Astrue*, No. 06-cv-6014 (FB), 2008 WL 620733, at *3 (E.D.N.Y. Mar. 5, 2008); *Tornatore*, 2006 WL 3714649, at *6; *Valet,* 2012 WL 194970, at *22 (remanding where the ALJ did not consider all seven of the factors required.)  On remand, the ALJ must thoroughly evaluate plaintiff's credibility with sufficient specificity, and specifically apply the seven factors.

## CONCLUSION

For all the foregoing reasons, Plaintiff's motion for judgment on the pleadings is GRANTED, Defendant's cross-motion for judgment on the pleadings is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.  The Clerk of Court is respectfully directed to enter judgment in favor of Plaintiff and close the case.

**SO ORDERED.**


                                    /s/ Kiyo A. Matsumoto
                                    **Hon. Kiyo A. Matsumoto**
                                    United States District Judge
                                    Eastern District of New York


Dated:     September 21, 2021
           Brooklyn, New York